# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## CA 22-294


**JOSEPH H. GAUTREAUX**

**VERSUS**

**LOUISIANA FARM BUREAU**
**CASUALTY INSURANCE CO.,ET AL.**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 81835
HONORABLE ANTHONY THIBODEAUX, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## GARY J. ORTEGO
## JUDGE

**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, Chief Judge, Charles G. Fitzgerald, and Gary J. Ortego, Judges.


**AFFIRMED, AND REMANDED FOR FURTHER PROCEEDINGS.**


Fitzgerald, J., dissents in part with assigned reasons and concurs in part.

**Wayne J. Lee**
**Heather S. Lonian**
**Stone Pigman Walther Wittmann, L.L.C.**
**909 Poydras Street, Suite 3150**
**New Orleans, Louisiana 70112**
**(504) 581-3200**
**Counsel for Defendant/Appellant:**
    **Louisiana Farm Bureau Casualty Insurance Company**

**James K. Ordeneaux**
**Matthew T. Habig**
**Plauche Maselli Parkerson, L.L.P.**
**701 Poydras Street, Suite 3800**
**New Orleans, Louisiana 70139**
**(504) 582-1142**
**Counsel for Defendant/Appellant:**
    **Louisiana Farm Bureau Casualty Insurance Company**

**Charles C. Garrison**
**Caffery, Oubre, Campbell & Garrison, L.L.P.**
**Post Office Drawer 12410**
**New Iberia, Louisiana 70562**
**(337) 364-1816**
**Counsel for Defendant/Appellant:**
    **Louisiana Farm Bureau Casualty Insurance Company**

**Stephen B. Murray, Jr.**
**Stephen B. Murray, Sr.**
**Arthur M. Murray**
**701 Poydras Street, Suite 4250**
**New Orleans, Louisiana 70139**
**(504) 525-8100**
**Counsel for Plaintiffs/Appellees:**
    **Joseph Harvey Gautreaux**
    **Individually and On Behalf of Others Similarly Situated**

**Kenneth W. Dejean**
**Law Offices of Kenneth W. Dejean**
**Post Office Box 4325**
**Lafayette, Louisiana 70502-4325**
**(337) 235-5294**
**Counsel for Plaintiffs/Appellees:**
    **Joseph Harvey Gautreaux**
    **Individually and On Behalf of Others Similarly Situated**

**Kenneth D. St. Pe**
**Kenneth D. St. Pe, APLC**
**311 West University Avenue, Suite A**
**Lafayette, Louisiana 70506**
**(337) 534-4043**
**Counsel for Plaintiffs/Appellees:**
    **Joseph Harvey Gautreaux**
    **Individually and On Behalf of Others Similarly Situated**

**John Randall Whaley**
**Benjamin H. Dampf**
**Whaley Law Firm**
**6700 Jefferson Highway**
**Building 12, Suite A**
**Baton Rouge, Louisiana 70806**
**(225) 302-8810**
**Counsel for Plaintiffs/Appellees:**
    **Joseph Harvey Gautreaux**
    **Individually and On Behalf of Others Similarly Situated**

**ORTEGO, Judge.**

The issue on appeal is whether the trial court erred in its rulings on five separate motions for summary judgment.

## FACTS AND PROCEDURAL HISTORY

In 2014, Plaintiff, Joseph H. Gautreaux (Gautreaux), filed a petition for damages, penalties, attorney fees, and class certification against Defendant, Louisiana Farm Bureau Casualty Insurance Company (Farm Bureau). Gautreaux alleged in his petition that he and potential class members had automobile insurance policies with Farm Bureau, and that Farm Bureau breached its contractual obligations under those policies.

One year before filing suit, Gautreaux's 2008 Ford F-250 was involved in an automobile accident. Gautreaux made a claim against the collision coverage of his automobile policy with Farm Bureau. The vehicle was ultimately deemed a total loss. Thus, to assist in determining the vehicle's actual cash value, Gautreaux provided Farm Bureau with a valuation report from the National Automobile Dealers Association (NADA). Gautreaux's petition alleged that Farm Bureau refused to honor the NADA report, relying instead on its own system, known as the Mitchell Work Center Total Loss (WCTL) computer program.

Plaintiffs contend that the Mitchell WCTL system is a business-to-business product offered by Mitchell to subscribing insurance companies, such as Farm Bureau. Plaintiffs argue that the WCTL system generates values that are unfairly low, that Farm Bureau is aware of this fact, and that Farm Bureau uses the system to intentionally undervalue total loss vehicles. According to Gautreaux, the WCTL does not meet the statutory requirements of La.R.S. 22:1892(B)(5) for determining the actual cash value of their insured's total loss vehicle. By refusing to pay actual cash value, Farm Bureau breached the terms and conditions of its policy with

Gautreaux and other similarly situated policy holders. The petition therefore seeks damages representing the difference between the amount tendered by Farm Bureau and the actual cash value of the total loss vehicles. The petition also asserts that Farm Bureau breached its duty to adjust claims fairly under La.R.S. 22:1892 and La.R.S. 22:1973, thereby warranting penalties and attorney fees. Finally, the petition asserts general tort claims of "fraud, misrepresentation, and duress."

Many years after the petition was filed, the trial court granted class certification. Thereafter, a jury trial was set for October 11, 2021. However, two months prior to trial, Plaintiffs filed a motion for partial summary judgment on the issue of statutory compliance, specifically seeking judgment that Farm Bureau's WCTL system violates the requirements of La.R.S. 22:1892(B)(5). Farm Bureau, in turn, filed a cross-motion for summary judgment as to compliance with that statute.

Farm Bureau also filed three other motions for partial summary judgment. The first sought dismissal of Plaintiffs' bad faith claims. The second sought dismissal of Plaintiffs' claims for fraud, misrepresentation, and duress. The third sought judgment declaring that La.R.S. 22:1892(B)(5) does not require insurers to use NADA.

The hearing on all five motions was held on September 22, 2021. The trial court ruled from the bench. In summary, the trial court granted Plaintiffs' noncompliance motion, and denied Farm Bureau's cross-motion. As to Farm Bureau's three other motions, their bad faith motion was granted in part and denied it in part; their fraud motion was also granted in part and denied in part; and their NADA motion was granted.

The trial court's rulings were reduced to a single written judgment dated November 15, 2021. The judgment was designated as a final judgment pursuant to La.Code Civ.P. art. 1915(B)(1). Farm Bureau now appeals.

On appeal, Farm Bureau assigns that the trial court erred in granting Plaintiffs' noncompliance motion, in denying Farm Bureau's cross-motion, in denying in part its bad faith motion, in denying in part its fraud motion, and in using confusing decretal language in granting its NADA motion.

## ASSIGNMENTS OF ERROR

1. The Trial Court erred in granting Plaintiffs' Statutory Violation Motion because, at minimum, the uncontradicted fact and expert evidence presented by [Farm Bureau] demonstrated that genuine issues of material fact exist as to whether WCTL complies with La. R.S. 22: 92B(5) and the Trial Court improperly ignored uncontradicted fact and expert testimony and/or alternatively made factual determinations regarding those facts.

2. The Trial Court erred in denying [Farm Bureau's] Compliance Motion because the uncontested evidence established that WCTL valuations are derived from fair market surveys conducted using qualified retail automobile dealers in the local market as resources and/or determined from generally recognized used motor vehicle industry sources. Alternatively, the motion should have been granted because Plaintiffs have the burden of proving that WCTL violates La. R.S. 22:1892B(5) and the uncontroverted evidence and record established that Plaintiffs cannot meet their burden of proof.

3. The Trial Court erred in denying [Farm Bureau's] Bad Faith Motion in part, holding that Plaintiffs will be allowed to present a claim for penalties and attorney fees under La. R.S. 22:1973 and 22:1892 without first proving that [Farm Bureau] paid insureds less than the ACV of their respective vehicles at the time of the loss, as required by the insurance policies and without proving that the failure to pay the amount due was arbitrary, capricious or without probable cause. The Trial Court's ruling contravenes the plain language of Sections 1892 and 1972. The Legislature did not establish a penalty for noncompliance with Section 1892B(5) and neither penalties nor attorney's fees for non-compliance are authorized by Section 1973. In the context of the allegations and evidence of this case, there is no cause or right of action under La. R.S. 22:1973 for using a total loss valuation that does not comply with La. R.S. 22:1892B(5) without proof that [Farm Bureau] failed to timely pay the amount due under the contract and that the failure to pay was arbitrary, capricious and

3

without probable cause. [Farm Bureau's] motion should have been granted in full.

4.    The Trial Court erred in not granting [Farm Bureau's] Fraud Motion in full by erroneously holding that Plaintiffs can assert claims for misrepresentation under La. R.S. 22:1973, despite Plaintiffs' prior disavowal of such claims and the Courts' reliance upon that withdrawal. Plaintiffs did not plead a claim for misrepresentation under La. R.S. 22:1973(B)(1) and presented no evidence of any such misrepresentation by [Farm Bureau], no evidence of materiality of any statement, and no evidence of reliance by any class member. Thus, the theoretical 1973(B)(1) claim accepted by the Trial Court's ruling was not properly before the court. Moreover, even if the claim was before the court, the Judgment is erroneous because La. R.S. 22:1973(B)(1) does not provide a claim where there is no specific misrepresentation by the insurer and no reliance by the insured as a matter of law, evidence of which is totally absent and precluded by the Trial Court's own Judgment. [Farm Bureau's] motion should have been granted in full.

5.    The Trial Court correctly granted [Farm Bureau's] motion for partial summary judgment on NADA, holding that La. R.S. 189213(5) does not require insurers to use NADA valuations, and that it is improper for an insurer to rely upon NADA Valuations without consideration of facts specific to individual vehicle. In order to prevent confusion, [Farm Bureau] simply requests that this Court alter the judgment in order to incorporate the decretal language requested in its motion.

## LAW AND DISCUSSION

### I.    *Standard of Review*

In reviewing the trial court's decision on a motion for summary judgment, this court applies the de novo standard of review using the same criteria applied by the trial court to determine whether summary judgment is appropriate. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So.2d 880.

"[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

4

The burden of proof in summary judgment proceedings is set forth in La.Code Civ.P. art. 966(D)(1), which states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"The only documents that may be filed in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4). "The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum." La.Code Civ.P. art. 966(D)(2).

## II. *First and Second Assignments of Error - WCTL Compliance with La.R.S. 22:1892(B)(5)*

In its first assignment of error, Farm Bureau asserts that the trial court erred in granting Plaintiffs' noncompliance motion because genuine issues of material fact exist as to whether the WCTL system complies with La.R.S. 22:1892(B)(5). We find no merit to this assertion.

5

Louisiana Revised Statutes 22:1892(B)(5) provides three exclusive methods for determining the actual cash value of a total loss vehicle, stating as follows (emphasis added):

(B)(5) When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:

(a) *A fair market value survey conducted using qualified retail automobile dealers in the local market area as resources.* If there are no dealers in the local market area, the nearest reasonable market can be used.

(b) *The retail cost as determined from a generally recognized used motor vehicle industry source*; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.

(c) A qualified expert appraiser selected and agreed upon by the insured and insurer. The appraiser shall produce a written nonbinding appraisal establishing the actual cash value of the vehicle's preloss condition.

(d) For the purposes of this Paragraph, local market area shall mean a reasonable distance surrounding the area where a motor vehicle is principally garaged, or the usual location of the vehicle covered by the policy.

Farm Bureau concedes that the Mitchell WCTL system is not a qualified *appraiser* under La.R.S. 22:1892(B)(5)(c). Thus, we turn to subsections (B)(5)(a) and (B)(5)(b) and analyze whether the Mitchell WCTL system used by Farm Bureau complies with either of those subsections.

Interpretation and construction of statutes created by legislative acts are tasked to the judicial branch of government wherein the first step is to look to the language of the statute. *Touchard v. Williams*, 617 So.2d 885 (La.1993). "When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent." La.Civ.Code art. 9.

The first issue before us is whether Farm Bureau's use of the Mitchell WCTL system, to determine the actual cash value of a total loss vehicle of its insureds, as a matter of law, complies or violated La.R.S. 22:1892(B)(5). Plaintiffs have the burden to prove this issue as both movant of this summary judgment, and as the party that has the burden of proof on this issue at trial on the merits. Therefore, in proper summary judgment analysis, we must determine whether Plaintiffs have proven the lack of genuine issues of material fact and entitlement to a judgment as a matter of law that Farm Bureau failed to comply with La.R.S. 22:1892(B)(5) by using the Mitchell WCTL system.

The first of the two compliant methods to determine the actual cash value of a total loss vehicle is delineated by subsection (B)(5)(a) providing for the use of "a fair market value survey using qualified retail automobile dealers in the local market area as resources." The language of La.R.S. 22:1892(B)(5)(a) is clear. To comply with subsection (B)(5)(a), the Mitchell WCTL system must survey, or use information gathered from participants, as to the fair market value of a vehicle. The participants in that survey must be qualified, local area retail automobile dealers.

To show that the Mitchell system fails to comply with subsection (B)(5)(a), Plaintiffs provided the trial court with Mitchell's own internal documents detailing how the Mitchell WCTL system determines the actual cash value of a total loss

vehicle. The produced documents indicate that, initially, the Mitchell WCTL system finds twenty or less "comparable vehicles" within a given geographic area. The documents state that the "comparable vehicles" are derived from "consumer-based vehicle sources along with inventory directly from Dealerships. When available WCTL also provides sale vehicle records from sources such as J.D. Power and the CA DMV." The documents specifically list J.D. Power and Associates, AutoTrader.com, cars.com, Vast.com, and the California Department of Motor Vehicles as sources to find "comparable vehicles."

According to these produced documents, after selecting and gathering the list or sell price of the "comparable vehicles," the Mitchell WCTL system determines an adjusted value of the "comparable vehicles." One such adjustment is the "projected sold adjustment" wherein, when only the advertised price was available for a "comparable vehicle," the Mitchell WCTL system applies "a factor to the advertised price based on historical price negotiating behavior of sellers of vehicles similar to yours." Once that and other adjustments are made, the average adjusted value of the "comparable vehicles" is calculated and determined to be the vehicle of the insured's Loss Vehicle Base Value.

Next, the produced documents show that other adjustments are made prior to the Mitchell WCTL system reaching its conclusion of the actual cash value of a total loss vehicle. One is the mileage adjustment which is determine by estimations "based on millions of retail transactions." Other adjustments that are applied by the Mitchell WCTL system include adjustments for vehicle type, vehicle options, the condition of the vehicle or preexisting damage to the vehicle.

To further show that the Mitchell WCTL system fails to comply with subsection (B)(5)(a), Plaintiffs provided sample claim and valuation documentation, such as the Mitchell WCTL system's valuation report for a class

8

member, Yvette Beauchamp. Beauchamp's address listed on the report, when she incurred the total loss of her vehicle, is St. Martinville, Louisiana. The "comparable vehicles" selected by the Mitchell WCTL system were from the following locations and distances from Beauchamp in St. Martinville, Louisiana: Nederland, Texas, approximately *150 miles away*; Bunkie, Louisiana, approximately *50 miles away*; Houma, Louisiana, approximately *70 miles away*; and Gulfport, Mississippi, approximately *150 miles away*.

According to Plaintiffs, this report further indicates that the Mitchell WCTL system fails to comply with subsection (B)(5)(a)'s mandated use of a survey of local dealers because, first, choosing a limited number of comparable vehicles from a database cannot be considered a survey. Additionally, Plaintiffs point out that there are several dealers within 25 miles of Beauchamp's address which are purposely not utilized in that WCTL report. These several available dealers are clearly part of the local market area to be used as resources, as contemplated by plain language of the statute versus those in different states and approximately 150 miles away.

To counter this evidence produced by Plaintiffs that the Mitchell WCTL system fails to comply with subsection (B)(5)(a), Farm Bureau submitted the report of Rene Befurt, Ph.D. Berfurt opined that the Mitchell WCTL system contains the ***essential characteristics*** of fair market value surveys. (emphasis added.)

Additionally, Farm Bureau submitted the expert report of Arnold Barnett, Ph.D. Barnett opined that the methodology of the Mitchell WCTL system *is* statistically sound with no systemic bias in its price estimates, i.e., no systemic tendency to under- or over-estimate the market price.

Farm Bureau argues that the reports of these two experts shows that the Mitchell WCTL system, used by Farm Bureau, complies with subsections (B)(5)(a) and (B)(5)(b), or at the least creates an issue of material fact. We disagree.

To comply with subsection (B)(5)(a), the Mitchell WCTL system must survey, or use information gathered from participants, as to the fair market value of a vehicle. These *participants* in that survey must be *qualified, local area retail automobile dealers* (emphasis added).

While it is true that both Berfurt and Barnett's conclusions find that the Mitchell WCTL system complies, we find that their opinions are mostly just statements of law and not based in fact. Additionally, expert opinions would be secondary to the plain language of the statute, and thus their opinions do not constitute any issue of fact that is material. Regardless of whether both expert's views are taken as true, Louisiana Law, La.R.S. 22:1892(B)(5)(a), mandates that Farm Bureau shall use an actual "fair market value survey" when choosing to pay its insured a cash settlement derived from the actual cost to buy comparable vehicle. Farm Bureau's use of a system with the *"essential characteristics"* of a fair market value survey that has no systemic biases is clearly not sufficient for compliance as to the clear and unambiguous language of Subsection (B)(5)(a).

Additionally, and we find that this is why the legislature, in its wisdom, provided these specific methods of compliance, and the legal requisites therein, in order to prevent and prohibit exactly what Farm Bureau is attempting with their use of the Mitchell WCTL system, namely, to avoid strict compliance with La.R.S. 22:1892(B)(5).

The "fair market value survey" provided for in La.R.S. 22:1892(B)(5)(a) requires that the survey be conducted by the insurer using qualified retail dealers in the *local market area as resources*. The "survey" conducted by the Mitchell

WCTL system does not comply with this requirement. Farm Bureau has failed to show that it used local dealer to find comparable vehicles when calculating total loss value. Farm Bureau has also failed to show that is used dealers in the nearest reasonable market if none for available in the local market. Accordingly, we find that the evidence presented and submitted by Plaintiffs, including the documents from Mitchell, proves, by law, that the Mitchell WCTL system is not a "fair market value survey using qualified retail automobile dealers in the local market area as resources."

For these reasons, we find the Plaintiffs have carried their burden to prove, by law, that the Mitchell WCTL system is not for the use as "a fair market value survey using qualified retail automobile dealers in the local market area as resources," and, as such, does not comply with La.R.S. 22:1892(B)(5)(a).

Next, we turn our attention to subsection (B)(5)(b). This subsection allows total loss valuation based on "the retail cost as determined from a generally recognized used motor vehicle industry source."

Plaintiffs argue that the Mitchell WCTL system is an *insurance* industry source rather than used vehicle industry source. In support, Plaintiffs produced the deposition transcript of Mitchell representative, Donn Keatley (Keatley).

Plaintiffs point out that Keatley acknowledged that the Mitchell WCTL system is only marketed to insurance companies and a few rental car companies. As such, according to Plaintiffs, the Mitchell WCTL system is not "a generally recognized used motor vehicle industry source" as required by the clear and unambiguous language of subsection (B)(5)(b).

Having reviewed Keatly's testimony to surmise whether Plaintiffs have carried their burden of proof, we highlight the following (emphasis added):

Q.　The WorkCenter Total Loss product is part of a broader suite that Mitchell has and - - and markets to insurance companies; is that correct?

A.　Yes.

Q.　The - - product, and specifically WorkCenter Total Loss, is what you would call a business-to-business product; is that correct?

A.　What is the definition of business to business, I guess?

Q.　In order words, in - - in difference to NADA, which might market their product to both businesses and consumers, Mitchell is interested only in marketing it to other businesses, and specifically insurance companies and a few rental car companies; is that fair?

A.　Then that's correct.

. . . .

Q.　*The Mitchell WorkCenter Total Loss product is not something that's used by used car dealers, is it?*

A.　*No.*

Q.　Mitchell, as a company, apart from providing the service where they attempt to valuate Total Loss vehicles, they do not provide any of the products for evaluating the price of vehicles on the resale market; would you agree with that?
A.　I am not aware of any -- that maybe -- let me think about that. I am trying to think. I think that's an accurate statement, yes.

Q.　Are you familiar with NADA or Kelley Blue Book?

A.　Yes.

Q.　*So, for example, if somebody wants to buy a car or another person wants to sell a car, they might reference those products to see -- to give them an idea of what their vehicle might be worth or is that that your understanding?*

A.　*Those were those were guidebooks or sources of information to reference vehicle values, yes.*

12

*Q. Mitchell doesn't provide any service like that does it?*

*A. No.*

. . . .

Q. Someone other than an insurance company, average person out on the street who is looking to buy or sell the -- a used vehicle.

A. We do not sell it to those individuals.

Q. They don't -- they do not have access to it?

A. They would not.

Q. Do used car dealers have access to the Mitchell WorkCenter Total Loss valuations?

A. No.

Q. Do new car dealers have access to the Mitchell –

A. No.

Q. -- WorkCenter Total Loss valuations?

A. No.

This testimony makes it clear that the Mitchell WCTL system has limited availability and was created specifically to be used by insurance companies, such as Farm Bureau, exclusively for their purpose of valuing total loss vehicles. Further, it is clear from this testimony that no one in the used motor vehicle industry uses or even has access to the Mitchell WCTL system when evaluating vehicles or retail costs.

Farm Bureau, in its effort to controvert this evidence, again relies on the expert opinion of Rene Befurt, Ph.D. Berfurt opines that the electronic databases from which the Mitchell WCTL system derives local market values are considered to be generally recognized used motor vehicle industry sources.

13

Once again, Farm Bureau's reliance on Berfurt's opinion is misguided. Even if Berfurt's opinion is taken as fact, subsection (B)(5)(b) does not allow for the use of a conglomeration of adjusted values provided by generally recognized used motor vehicle industry sources. It specifically mandates that the retail value is derived "from a generally recognized used motor vehicle industry source." The Mitchell WCTL system's sources are not relevant. The Mitchell WCTL system, itself, must be "a generally recognized used motor vehicle industry source." Plaintiffs have produced a plethora of evidence that the Mitchell WCTL system is not such, while Farm Bureau has failed to produce any credible evidence that the Mitchell WCTL system is such a source.

For these reasons, we find the Plaintiffs have carried their burden to prove, by law, that the Mitchell WCTL system is not "a generally recognized used motor vehicle industry source," and, as such, does not comply with La.R.S. 22:1892(B)(5)(b).

In summation, we find that Plaintiffs have carried their burden of producing prima facie evidence that Farm Bureau's use of the Mitchell WCTL system, by law, does not comply with subsection (a) or (b) of La.R.S. 22:1892(B)(5). Thereafter, the burden shifted to Farm Bureau to produce evidence of the existence of a material factual dispute or demonstrate that Plaintiffs are not entitled to judgment as a matter of law on this issue. We find that Farm Bureau has failed to do so.

The first method at issue, under La.R.S.22:1892(B)(5)(a), provides for the use of a fair market value survey using qualified retail automobile dealers in the local market area. Based on the undisputed facts and evidence provided in the

14

record, we find that the Mitchell WCTL system fails to comply with the clear and unambiguous language of La.R.S. 22:1892(B)(5)(a) because it fails to conduct a fair market value survey using qualified retail auto dealers in the local area as resources.

The second method under La.R.S. 22:189(B)(5)(b) provides for the determination of retail cost from a generally recognized used motor vehicle industry source. Based on the facts and evidence in the record, we find that the Mitchell WCTL system fails to comply with La.R.S. 22:189(B)(5)(b) because retail costs was not determined from a generally recognized used motor vehicle industry source. The Mitchell WCTL system's database was created specifically to be used by insurance companies as evidenced above in the testimony of Mitchell representative, Donn Keatley. Keatley testified that no one in the used motor vehicle industry uses or even has access to the Mitchell WCTL system when evaluating vehicles or retail costs.

For these reasons, we find that the Mitchell WCTL system does not comply with La.R.S. 22:1892(B)(5)(a) or (b) and, thus, Farm Bureau's use of the Mitchell WCTL computer program, including Farm Bureau's practice of adjusting values downward for condition using nationwide data, by law, violates La.R.S. 22:1892(B)(5).

In its second assignment of error, Farm Bureau contends that the trial court erred in denying its cross-motion for summary judgment asserting that WCTL system complies with La.R.S. 22:1892(B)(5). Our finding above renders this assigned error without merit.

For the above reasons, we find that the Mitchell WCTL system, by law, does not comply with La.R.S. 22:1892(B)(5). Thus, Farm Bureau's use of the Mitchell WCTL computer program, including Farm Bureau's practice of adjusting values downward for condition using nationwide data, violates La.R.S. 22:1892(B)(5).

Therefore, the trial court's grant of the plaintiffs' motion for summary judgment and denial of Farm Bureau's cross-motion for summary judgment, as to compliance with LA.R.S. 22:1892(B)(5), are hereby affirmed.

III. *Third and Fourth Assignments of Error - Bad Faith and Fraud Claims*

In its third assignment of error, Farm Bureau contends that the trial court erred in denying in part its bad-faith motion, thereby allowing Plaintiffs to present claims for penalties and attorney fees under La.R.S. 22:1973. And in its fourth assignment, Farm Bureau contends that the trial court erred in denying in part its fraud motion, thereby allowing Plaintiffs to assert claims for misrepresentation under La.R.S. 22:1973.

While we were willing to extend our appellate jurisdiction to review the trial court's denial of Farm Bureau's cross-motion, we are unwilling to extend our jurisdiction to review the denial of these other two motions for partial summary judgment. In our view, entertaining the appeal of these two partial summary judgments currently does nothing more than promote piecemeal litigation.

Moreover, in *Granger v. Guillory*, 00-363 (La.App. 3 Cir. 4/26/00), 762 So.2d 640, 641, a different panel of this court explained that the "[t]he trial court's rendition of judgment certifying the denial of the motion for summary judgment as an appealable order was ineffectual." *Id*. at 641. "While certification is allowed under Article 1915 of partial judgments which grant a motion for summary

judgment, this statute does not authorize the certification of a judgment denying a motion for summary judgment." *Id.*[1]

For the above reasons, Farm Bureau's appeal of their partial motion for summary judgment as to bad faith and fraud is dismissed and remanded to the trial court for further proceedings.

IV. *Decretal Language related to the NADA*

In its fifth and final assignment of error, Farm Bureau specifically contends as follows:

> The Trial Court correctly granted [Farm Bureau's] motion for partial summary judgment on NADA, holding that La.R.S. [22:]1892(B)(5) does not require insurers to use NADA valuations, and that it is improper to rely upon NADA valuations without consideration of facts specific to individual vehicle[s]. In order to prevent confusion, [Farm Bureau] simply requests that this Court alter the judgment in order to incorporate the decretal language requested in its motion.

The decretal language requested in Farm Bureau's motion is "that it is improper to rely upon NADA valuations without consideration of facts specific to individual vehicles."

However, the record reflects that the trial court's judgment states that "La. R.S. 22:1892(B)(5) does *not require* the use of NADA clean retail values without ever conducting vehicle-by-vehicle analysis of the actual condition of the total loss vehicle." (emphasis in original).[2] In its brief to this court, Farm Bureau argues that

---

[1] In relevant part, La.Code Civ.P. art. 1915 states:

> B. (1) When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

[2] As noted in the summary-judgment evidence before us, the term "clean retail" describes an automobile in ready for sale condition on a used car dealer lot. NADA specifically defines "clean retail" as "a vehicle with no mechanical defects and passes all necessary inspections with ease[.]"

"[t]he Judgment could be read to mean that NADA is *required* when a vehicle-by-vehicle analysis is conducted." (emphasis in original). We disagree. The decretal language used by the trial court is neither confusing nor does it misstate the law. This assignment is without merit.

## DECREE

For the above reasons, the trial court's grant of Plaintiffs' motion for partial summary judgment that Farm Bureau's use of the Mitchell WCTL system does not comply with La.R.S. 22:1892(B)(5) is affirmed. This finding necessitates that the trial court's denial of Farm Bureau's cross-motion for summary judgment is also affirmed.

Further, the trial court's decretal language relative to the NADA motion, and grant of Farm Bureau's motion for partial summary judgment relative to NADA is affirmed.

Finally, the appeal of the trial court's denial of Farm Bureau's bad faith and fraud motions are dismissed and remanded to the trial court for further proceedings. Costs of this appeal are assessed to Defendant, Louisiana Farm Bureau Casualty Insurance Company.

**AFFIRMED, AND REMANDED FOR FURTHER PROCEEDINGS.**

JOSEPH HARVEY GAUTREAUX

VERSUS

LOUISIANA FARM BUREAU CASUALTY
INSURANCE COMPANY

FITZGERALD, J., dissents in part with assigned reasons and concurs in part.

I respectfully disagree with the majority's decision to affirm the trial court's grant of Plaintiffs' motion for partial summary judgment on the issue of statutory compliance. The reasons below correspond to Farm Bureau's first assignment of error: Farm Bureau initially asserts that the trial court erred in granting Plaintiffs' motion because genuine issues of material fact exist as to whether the WCTL system complies with La.R.S. 22:1892(B)(5). In my view, Farm Bureau is correct.

The issue is whether the WCTL violates subsections (B)(5)(a) and (B)(5)(b). And because Plaintiffs have the burden of proving this at trial, the first step of de novo review is to determine whether Plaintiffs have supported their motion with prima facie evidence of noncompliance.

Plaintiffs' motion describes the WCTL system as a "proprietary, database valuation tool" offered by Mitchell International Inc. (Mitchell) to subscribing clients such as Farm Bureau. According to Plaintiffs, the WCTL database system determines vehicle values by locating comparable vehicles within a given geographic area, selecting a handful of those comparables, discarding the rest, and then applying various algorithms based on national data to adjust those comparables.

Thus, Plaintiffs initially contend that the WCTL is not a "fair market value survey" as required by La.R.S. 22:1892(B)(5)(a). Plaintiffs suggest that the term "survey" contemplates a broad treatment of a subject whereas the WCTL only considers a small, rather than broad, number of comparable vehicles. In support, Plaintiffs attached to their motion WCTL proprietary documents which explain that the number of comparable vehicles used by the system is capped at twenty. Plaintiffs maintain that viewing only twenty comparable vehicles cannot be considered a fair market value survey.

Plaintiffs next assert that even if the WCTL is a fair market value survey, the survey is not conducted using "qualified retail automobile dealers in the local market area as resources" as required by subsection (B)(5)(a). In support, Plaintiffs filed with their motion the WCTL valuation report for class member Yvette Beauchamp. The report shows that the base value was calculated by using four comparable vehicles ranging from 52 to 149 miles away from Beauchamp. This distance, according to Plaintiffs, far exceeds what would qualify as a "local market area" under the statute. Plaintiffs claim that the WCTL failed to use the car dealers located within 25 miles of Beauchamp. And according to Plaintiffs, these are the dealers that are within the local market area as contemplated by the statute.

Finally, Plaintiffs turn their attention to subsection (B)(5)(b), arguing that the WCTL is an insurance industry source rather than "a generally recognized used motor vehicle industry source[.]" In support, Plaintiffs point to the deposition transcript of Mitchell representative Donn Keatley, who states that the WCTL is only marketed to insurance companies and a few rental car companies. Thus, according to Plaintiffs, Mitchell does not license or sell the WCTL to new or used motor-vehicle dealers or individuals shopping for these vehicles.

Plaintiffs also filed numerous other documents with their motion for summary judgment, including WCTL proprietary documents regarding data compilation and the deposition transcript of NADA representative Mike Stanton. Because Plaintiffs carried their burden of producing prima facie evidence of Farm Bureau's statutory noncompliance, the burden shifted to Farm Bureau to produce evidence of the existence of a material factual dispute or demonstrate that Plaintiffs are not entitled to judgment as a matter of law.

Farm Bureau first addresses the WCTL's compliance with La.R.S. 22:1892(B)(5)(a), which contemplates a "fair market value survey conducted using qualified retail automobile dealers in the local market area as resources." In support, Farm Bureau attached to its memorandum in opposition of summary judgment the affidavit and report of Rene Befurt, Ph.D., an expert in designing, conducting, and analyzing market surveys. Dr. Befurt concluded that the WCTL conducts a fair market value survey because it has all the essential elements of a fair market value survey: "it (1) clearly defines the target population, (2) uses a clear sampling frame to identify and screen for members of the target population, and (3) precisely queries information regarding the characteristics of the relevant vehicles." He also observed that the WCTL looks for the most comparable vehicles in the local market. Contrary to Plaintiffs' suggestions, Dr. Befurt believed that the adjustments made to comparable vehicles did not detract from the WCTL's status as a fair market value survey using local dealerships as resources.

Farm Bureau also filed with its opposition memorandum the deposition transcript and report of Arnold Barnett, Ph.D., a professor at the Massachusetts Institute of Technology. Dr. Barnett explained that the algorithms used by the WCTL are "eminently reasonable and carefully constructed." According to Dr.

Barnett, the WCTL is "utterly similar in structure and purpose to any other existing methods for processing market survey results, all of which use algorithms."

In addition, Farm Bureau submitted countervailing evidence to Plaintiffs' assertion that the WCTL does not derive its values using "qualified retail automobile dealers in the local market area as resources." *Id*. For example, Mitchell representative Donn Keatley explained in his deposition that the WCTL surveys local market dealerships by searching for comparable vehicles within a geographic radius. It does so by searching for the best comparable vehicles in the local market. Only when it cannot find three comparable vehicles of dealerships within an initial 75-mile search does it expand the search beyond 75 miles. According to Farm Bureau, this is consistent with subsection (B)(5)(a). And the process of selecting the best comparables from the local market—or the nearest market when insufficient comparables are available—is reflected on the face of the WCTL valuation report for each class member. Each report identifies the comparable vehicles and the distance from the insured's vehicle.

Based on the above, Farm Bureau asserts that genuine issues of material fact exist as to whether the WCTL complies with La.R.S. 22:1892(B)(5)(a). Specifically, Farm Bureau contends that genuine issues of material fact exist as to whether the WCTL is a fair market value survey; and genuine issues of material fact exist as to whether the WCTL uses local dealers as resources for each class member.

Farm Bureau next turns its attention to La.R.S. 22:1892(B)(5)(b), contending that the WCTL is "a generally recognized used motor vehicle industry source[.]" In support, Farm Bureau points to Dr. Befurt's affidavit and expert report. Dr. Befurt concluded that the "WCTL derives actual cash values from generally recognized used motor vehicle sources" such as cars.com, autotrader.com, vast.com,

4

truecar.com, and J.D. Power. He then explained that the WCTL is used by financial institutions and insurers, both of which are essential participants in the used car industry. And all of this, he opined, is evidence that the WCTL itself is a generally recognized used motor vehicle industry source. Thus, Farm Bureau contends that genuine issues of material fact exist as to whether the WCTL complies with subsection (B)(5)(b).

Finally, Farm Bureau's opposition homes in on Plaintiffs' statement of undisputed material facts. The statement was submitted with Plaintiffs' original motion. And therein, Plaintiffs identify forty-nine facts which they claim are both undisputed and material. Yet Farm Bureau's opposition contradicts forty-eight of these facts with countervailing summary-judgment evidence. Take, for example, the following excerpt from Plaintiffs' statement of undisputed material facts:

STATEMENT NO. 4:

WCTL is available only to Mitchell's subscribers. . . .

RESPONSE TO NO. 4:

[Farm Bureau] contests Plaintiffs' Statement of Uncontradicted Material Fact No. 4 and submits countervailing evidence as follows: The testimony of Mike Stanton as the corporate representative of J.D. Power established that anyone using the J.D. Power website is directed to the Mitchell site when the user is looking for total loss valuations for a particular vehicle.

Plaintiffs' above statement and Farm Bureau's response are relevant to whether the WCTL is "a generally recognized used motor vehicle industry source" under La.R.S. 22:1892(B)(5)(b).

Here are two more examples:

STATEMENT NO. 14:

The projected sold adjustment is based on historic national sales data, not surveys of local dealers. . . .

RESPONSE TO NO. 14:

[Farm Bureau] contests Plaintiffs' Statement of Uncontradicted Material Fact No. 14 and submits countervailing evidence as follows: WCTL has a database of national sales data which is continuously updated. As Mitchell's corporate representative Philip Kroell testified:

> The projected sold, those you would need at least 30 records of where you have a—to develop a sold ratio, right, an average. They start at the—local market area, so the designated market area. And they only expand as needed.
>
> So it's—it is possible that when they have a sold projected price for a comparable in Louisiana, it will be based on sold transactional data from Louisiana.
>
> Kroell Dep. at 117.

. . . .

STATEMENT NO. 16:

The mileage adjustment is based on regional/national data. . . .

RESPONSE TO NO. 16:

[Farm Bureau] contests Plaintiffs' Statement of Uncontradicted Material Fact No. 16 and submits countervailing evidence as follows: The deposition testimony of Phillip Kroell, designated representative of Mitchell on August 5, 2017 . . . . "WorkCenter Total Loss makes appropriate adjustments for the difference in mileage between the loss vehicle and each comparable vehicle. Adjustments are estimated based on millions of retail transactions that are captured through J.D. Power dealer relationships . . ." and Affidavit of Matthew Racho, JD Power, Senior Director of the Power Information Network dated March 15, 2018 confirming that JD Power sales prices that may be shown on Mitchell reports for sales prices in Louisiana are derived from 82 franchise dealerships representing 160 franchises, all in the State of Louisiana[.]

Plaintiffs' above statements and Farm Bureau's responses are relevant to whether the WCTL is "[a] fair market value survey conducted using qualified retail automobile dealers in the local market area as resources" under La.R.S. 22:1892(B)(5)(a). And as noted previously, Dr. Befurt stated that these types of

adjustments do not detract from the WCTL's status as a fair market value survey using local dealerships as resources.

"In considering whether a genuine issue exists, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence." *Pritchard v. American Freightways Corp.*, 37,962, pp. 3-4 (La.App. 2 Cir. 12/10/03), 862 So.2d 476, 478. And "when the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and that is sufficient to allow a reasonable juror to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion." *Willis v. Medders*, 00-2507, p. 3 (La. 12/8/00), 775 So.2d 1049, 1051.

In the end, I believe that the trial court erred in making factual findings and weighing the evidence presented. Once Plaintiffs' produced prima facie evidence of Farm Bureau's statutory noncompliance, the burden shifted to Farm Bureau to produce evidence of the existence of a material factual dispute or demonstrate that Plaintiffs are not entitled to judgment as a matter of law. In my view, the summary-judgment evidence produced by Farm Bureau clearly demonstrates the existence of genuine issues of material fact. Thus, I would reverse the trial court's grant of Plaintiffs' motion for partial summary judgment.

I concur with the majority in all other respects.